OPINION
The present appeal arises following a jury verdict in favor of Minnie Bednarek ("appellee") in the Jefferson County Court of Common Pleas. The Administrator of the Bureau of Workers Compensation and the Industrial Commission of Ohio ("appellants") contend that the trial court erred when it denied their motion for a directed verdict. For the reasons set forth below, the decision of the trial court is affirmed.
 I. FACTS
Appellee's husband, James D. Bednarek, suffered a work related injury on April 26, 1993 while in the course and scope of his employment with Advanced Mining Systems, Inc. As a result of this injury, a Workers' Compensation claim was opened on behalf of Mr. Bednarek which was designated claim number 93-11528. Ultimately the claim was allowed for the following conditions: left shoulder sprain; left arm sprain; burn right hand; adjustment disorder with mixed emotional features of depression and anxiety; and neurodermatitis of both hands. The psychological allowance in Mr. Bednarek's claim stemmed from his inability to adjust to the severe physical limitations which resulted from his injuries. At no point in time was Mr. Bednarek ever able to return to any position of employment.
On July 24, 1996, Mr. Bednarek died at the age of 56. According to the death certificate, the cause of death was determined to be an acute myocardial infarction secondary to coronary artery disease and arteriosclerotic heart disease. Subsequently, appellee filed a claim with appellants for death benefits pursuant to R.C. 4123.59. The basis for said claim was that Mr. Bednarek's physical limitations and resulting psychological condition in conjunction with the inability to properly deal with the stress associated with his Workers' Compensation claim resulted in his demise substantially sooner than if he had never been injured at work. In its February 7, 1997 decision, the Bureau of Workers' Compensation denied appellee's claim for death benefits based upon a review performed by a Bureau of Workers' Compensation doctor. Appellee appealed the decision of the Bureau and ultimately received a favorable decision at the District Hearing Officer level of the administrative process. The District Hearing Officer found that appellee was entitled to benefits due to her husband's death. Following this decision, an appeal was filed by the Bureau of Workers' Compensation. The result of said appeal was that a Staff Hearing Officer vacated the lower decision and denied appellee the right to participate for death benefits. Although appellee filed an appeal from this decision, appellant-Industrial Commission of Ohio refused to hear said appeal.
Due to her lack of success at the administrative level, appellee filed a notice of appeal and complaint in the Jefferson County Court of Common Pleas in an attempt to have her benefits reinstated. Following the completion of discovery and other pre-trial matters, this case proceeded to a jury trial on July 14, 1998. At the conclusion of appellee's case-in-chief, appellants moved for a directed verdict on the grounds that appellee failed to introduce any evidence that Mr. Bednarek's death was substantially accelerated as a result of the allowed conditions in his Workers' Compensation claim. However, the trial court overruled said motion. Appellants' motion was renewed and again overruled at the conclusion of their presentation of testimony and evidence. At the conclusion of their deliberations, the jury returned a verdict finding that appellee was entitled to participate in the Ohio Workers' Compensation Fund for benefits pursuant to R.C. 4123.59. The trial court journalized the jury's finding on July 22, 1998.
On July 30, 1998, appellants filed a motion for judgment notwithstanding the verdict. Additionally, a motion for stay of proceedings to enforce the judgment pending appeal was filed. The trial court granted the stay but did not address the motion for judgment notwithstanding the verdict as appellants formally requested in writing that said motion be withdrawn. A timely notice of appeal was filed by appellants in which a single assignment of error is raised.
 II. ASSIGNMENT OF ERROR
Appellants' assignment of error reads as follows:
 "THE COURT BELOW ERRED IN OVERRULING THE ADMINISTRATOR, BUREAU OF WORKERS' COMPENSATION AND INDUSTRIAL COMMISSION OF OHIO'S MOTION FOR DIRECTED VERDICT AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AS DR. CHATTHA'S TESTIMONY DID [NOT] PROVIDE ANY EVIDENCE THAT MR. BEDNAREK'S DEATH WAS ACCELERATED BY A SUBSTANTIAL PERIOD OF TIME AS A DIRECT AND PROXIMATE RESULT OF HIS DEPRESSION."
Although appellants reference both the motion for directed verdict and the motion for judgment notwithstanding the verdict in their assignment of error, the latter will not be addressed herein. As previously mentioned, appellants withdrew said motion and thus the trial court was not afforded an opportunity to rule on it. In regards to the motion for directed verdict, appellants argue that appellee failed to offer any evidence at trial that her husband's death was accelerated by a substantial period of time as a direct and proximate result of the allowed conditions in the underlying Workers' Compensation claim. Absent evidence of this nature, appellants are of the position that appellee was unable to succeed as a matter of law on her claim for death benefits. Therefore, the trial court should have granted the motion for directed verdict.
Appellee responds to this argument with a number of assertions. First, appellee argues that appellants waived the right to challenge the trial court's decision regarding the directed verdict motion as they failed to renew the motion at the close of all evidence. While appellants did make their motion for directed verdict both at the close of appellee's case and at the close of their own case, appellee contends that the motion was not renewed at the end of her rebuttal. Therefore, the issue was not preserved for review on appeal.
Appellee also argues that she not only established that her husband's death was substantially accelerated by a substantial period due to the allowed conditions in the claim but also that the conditions were actually a proximate cause of the death. Therefore, it is appellee's position that she has successfully provided evidence which could meet either of the prongs of the test established by the Ohio Supreme Court for compensability. Based upon this conclusion, appellee asserts that the trial court correctly permitted the matter to proceed to the jury for a final determination.
 A. STANDARD OF REVIEW
Motions for directed verdicts are provided for in Civ.R. 50(A)(4) which states as follows:
 "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
The standard for appellate review on a motion for directed verdict is de novo: that is; to construe the evidence presented most strongly in favor of the nonmoving party and, after so doing, determine whether reasonable minds could only reach one conclusion, that being against the nonmoving party. Paul v.Grae-Con Constr., Inc. (Sept. 2, 1999), Jefferson App. No. 97-JE-49, unreported at 2; Titanium Industries v. S.E.A., Inc. (1997),118 Ohio App.3d 39, 47-48. In applying this standard, it is well established that a court must neither consider the weight of the evidence nor the credibility of, the witnesses. Id. citing Texlerv. D.C. Summers Cleaners Shirt Laundry Co. (1998), 81 Ohio St.3d 677,679. A court is to assume the truth of the evidence which supports the essential facts of the nonmoving party's claim and give the nonmoving party the benefit of all reasonable inferences of the evidence. Id. citing U.S. Fidelity GuarantyCo. v. Inter-City Products Corp. (Aug. 14, 1998), Columbiana App. No. 95-CO-75, unreported.
Furthermore, a motion for directed verdict tests the legal sufficiency of the evidence and thus presents' a question of law despite the need to review and consider the evidence. Bishop v.Munson Transp., Inc. (1996), 109 Ohio App.3d 573, 576. The relevant inquiry is whether substantial competent evidence supports the position of the party opposing the motion so that reasonable minds might reach different conclusions. Apel v. Katz
(1998), 83 Ohio St.3d 11, 19.
 B. APPLICABLE LAW
In order to prevent a directed verdict in a case such as the one at bar, a plaintiff must present evidence establishing that the death was accelerated by a substantial period of time as a direct and proximate result of the work injury. Oswald v. Connor
(1985), 16 Ohio St.3d 38, 41 citing McKee v. Electric Auto-LiteCo. (1958), 168 Ohio St. 77, syllabus. See, also, Senvisky v.Truscon Steel Div. of Republic Steel Corp. (1959), 168 Ohio St. 523,529-30. When attempting to meet this burden, a plaintiff is further required to show that there is a substantial causal relationship between the work accident and the accelerated death, and such relationship may not be proven by "mere magic words of direct causation without evidence to definitely support it." Id.
Testimony regarding the substantial acceleration of death must not be mere speculation or guess but rather must demonstrate with certainty an acceleration by an appreciable and substantial period of time. McKee, supra at 82-83.
 C. ANALYSIS
In first addressing appellee's assertion that appellants waived any error as related to the motion for directed verdict and thus the appeal should be dismissed, this court holds that such an argument is without merit. Pursuant to Civ.R. 50(A)(1), a motion for directed verdict may be made on the opening statement of the opponent, at the close of the opponent's evidence or at the close of all of the evidence. Appellee asserts that if the motion is not renewed at the close of all of the evidence, any error in the trial court's determination has been waived. Helmick v.Republic-Franklin Ins. Co. (1988), 39 Ohio St.3d 71; Cincinnati TractionCo. v. Durack (1908), 78 Ohio St. 243. While appellee concedes that appellants renewed the motion at the close of their case, she argues that appellants failed to renew the motion at the close of all of the evidence. Appellee arrives at this conclusion due to the fact that she introduced two rebuttal exhibits after appellants rested. Therefore, it is asserted that the motion for directed verdict had to again be renewed in order to preserve the matter for appeal.
However, a review of the record does not support appellee's position. Appellants clearly moved for a directed verdict at the close of appellee's case and said motion was denied. At the close of appellants' own case, a side-bar discussion occurred regarding the motion for directed verdict. During this same side-bar, appellee addressed the two exhibits which she sought to introduce as rebuttal exhibits. A discussion occurred between counsel and the bench and the admissibility of the exhibits was determined. At the end of the side-bar conference, appellee's rebuttal exhibits were admitted and the evidence and testimony were closed. In light of these circumstances, it cannot be held that appellants failed to preserve their right to challenge the trial court's determination. This is not a case where extensive testimony and evidence were admitted as rebuttal and defendant failed to renew his motion for directed verdict thereafter. On the contrary, the discussion regarding appellee's rebuttal exhibits and appellants' motion for directed verdict occurred contemporaneously during the side-bar conference. Insisting that appellants again renew their motion after the exhibits were formally admitted in open court would result in nothing more than unnecessary repetition.
As to the trial court's decision denying the motion for directed verdict, this court concludes that such was appropriate. A review of the record reveals that appellee did meet her burden of offering evidence which supported a finding that the death of her husband was accelerated by a substantial period of time as a direct and proximate result of the work injury. While appellants' position may have seemed more persuasive at the trial court level, this court is not to take a determination of this nature into consideration. As previously outlined, in reviewing a trial court's decision on a motion for directed verdict, our duty is to construe the evidence presented most strongly in favor of the nonmoving party in order to determine whether reasonable minds could reach different conclusions on the pertinent issue. Paul,Titanium Industries and Apel, supra.
Despite appellants' contention that appellee's medical expert was unable to give an opinion regarding a substantial acceleration of death, a review of the expert's testimony in its entirety reveals otherwise. Jaswinder Chattha, M.D. had her deposition testimony read into the record during the course of appellee's case-in-chief. Dr. Chattha was a psychiatrist who had treated Mr. Bednarek for approximately one and a half years for the allowed psychological condition in the underlying Workers' Compensation claim. In Dr. Chattha's opinion, Mr. Bednarek's remained morbidly depressed until his time of death despite medications and therapy. Several causes were given for this condition such as ongoing pain from the original physical injuries, financial problems and continued disability. Due to the development of the depressive condition, Mr. Bednarek was unable to properly cope with his personal difficulties and the Workers' Compensation system as a whole. The end result was that Mr. Bednarek would get worked up to the point he physically felt sick. Additionally, the depression and resulting stress from his situation resulted in various other manifestations such as the inability to sleep, twitching of the face and the development of a skin condition. In Dr. Chattha's opinion, Mr. Bednarek's depression was associated with the level of stress which ultimately resulted in his death due to a myocardial infarction.
Dr. Chattha went on to conclude that Mr. Bednarek's adjustment disorder with depressed mood did in fact substantially hasten his death. The reasoning for said conclusion was that the prolonged period of morbid depression along with the inability to cope and resulting stress caused Mr. Bednarek to suffer the acute problem of the myocardial infarction. If it was not for these ongoing processes, Mr. Bednarek would have been expected to live out his life just as any other male. Dr. Chattha's opinion can be clarified by looking to her previous statement that the average male lives to be 65 to 70 years old. In that Mr. Bednarek was only 56 at the time of death, it can be inferred from Dr. Chattha's testimony that the death occurred at least nine years earlier than if the depressive condition had not developed. The fact that Mr. Bednarek suffered from pre-existing coronary artery disease and arteriosclerotic heart disease; was being treated for high cholesterol; and was a heavy smoker did not alter Dr. Chattha's opinion as to the period of time which Mr. Bednarek's death had been accelerated. This opinion is justified on the basis that Mr. Bednarek had never exhibited signs of any type of heart problem or mentioned same to Dr. Chattha.
In light of this testimony by appellee's medical expert, reasonable minds could conclude that Mr. Bednarek's death was accelerated by a substantial period of time as a direct and proximate result of the allowed conditions in the Workers' Compensation claim. Dr. Chattha clearly testified regarding the causal connection between the conditions and the myocardial infarction. Additionally, testimony was provided as to the period of time Mr. Bednarek would have been expected to live had he not experienced the difficulties which arose out of his Workers' Compensation claim. Hence, appellee provided sufficient support so as to overcome appellants' motion for directed verdict.
Despite appellants' contentions to the contrary, this court has not been presented with circumstances similar to those in McKee,supra where testimony regarding the period of acceleration was speculative. In McKee, a 37 year old worker received an injury to his finger in the course and scope of his employment. At the time of the work related incident, the worker was suffering from pre-existing arteriosclerosis which was considered severe in nature. Approximately one week after the injury, the worker died from a coronary occlusion. The worker's surviving spouse then attempted to collect death benefits from the Ohio Bureau of Workers' Compensation on the basis that her husband's death was substantially accelerated by the work injury. However, benefits were ultimately denied due to the fact that the medical expert's testimony was mere speculation. The expert could not determine whether the worker would have died in two years, six months, a week or a day in the event that the work injury had not occurred.Id. at 80. The reason for this uncertainty was that the worker's heart condition was so severe that it could have resulted in death at any point in time due to any type of slight exertion, trauma or disease. Id. at 79.
In the case at bar, Dr. Chattha does not state such a speculative opinion. On the contrary, the present case is more akin to the situation presented in Oswald, supra. In that case, a worker at a zoo developed what was later determined to be atypical avian tuberculosis. At the time, he was also suffering from coronary artery disease. The worker eventually died at the age of 54 from a myocardial infarction. In an attempt to collect death benefits, the surviving spouse filed a claim with the Ohio Bureau of Workers' Compensation alleging that her husband's death was substantially accelerated due to the work related condition, as well as the emotional reaction of stress, depression and burn-out which her husband suffered as a result of his situation. In its decision, the Ohio Supreme Court held that there was sufficient proof to establish that the worker's death was substantially accelerated. Id. at 43-44. Expert testimony revealed that due to the worker's allowed conditions as well as the stress suffered as a result of these conditions and the surrounding circumstances, the worker's death had occurred earlier than it would have if no condition had been contracted at work. Id. The coronary artery disease alone was not sufficient to have caused the worker's sudden death by myocardial infarction.Id.
Based upon the foregoing reasons, the decision of the trial is affirmed as sufficient evidence was provided by appellee to establish that her husband's death was substantially accelerated as a direct and proximate result of the work related conditions.
Cox, P. J., Waite, J., concurs.
APPROVED:
 _________________________ JOSEPH J. VUKOVICH, JUDGE